IN THE UNITED STATES DISTRICT COURT
FOR THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

FORREST THOMAS,              )
                             ) No. 3-163
     Plaintiff,              )
                             
     v.

CENTENNIAL COMMUNICATIONS
CORP., CENTENNIAL CARIBBEAN
HOLDING CORP., and CENTENNIAL
USVI OPERATIONS CORP.,

     Defendants

## OPINION AND ORDER

### SYNOPSIS

In this civil action, Plaintiff, who was in the direct employ of Defendant Centennial USVI, alleges claims under Title VII, Virgin Islands anti-discrimination laws, and the FMLA against all Defendants. He also brings claims of misrepresentation, breach of contract and the duty of good faith and fair dealing, defamation, intentional infliction of emotional distress, and a claim for punitive damages. Essentially, his claims center on his allegations that Defendants discriminated against him in his employment because he is black, and not Puerto Rican.

Defendants Centennial Caribbean Holding Corp. ("Centennial Caribbean"), Centennial Communications Corp. ("Centennial Communications"), have filed Motions for Summary Judgment.[1]  For the following reasons, both Motions will be granted.

### OPINION

#### I. SUMMARY JUDGMENT STANDARD

---

[1] Defendant Centennial USVI has also moved for summary judgment. That Motion will be addressed in a separate Opinion and Order.

1

Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the Court must examine the facts in a light most favorable to the party opposing the motion. International Raw Materials, Ltd. V. Stauffer Chem . Co., 898 F. 2d 946, 949 (3d Cir. 1990). The moving party bears the burden of demonstrating the absence of any genuine issues of material fact. United States v. Onmicare, Inc., 382 F. 3d 432 (3d Cir. 2004).

Rule 56, however, mandates the entry of judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof. Celotex Corp. v. Cattrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 265 (1986). The sum of the affirmative evidence to be presented by the non-moving party must be such that a reasonable jury could find in its favor; it cannot simply reiterate unsupported assertions, conclusory allegations, or suspicious beliefs. Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995). "[I]f the non-movant's evidence is merely speculative, conclusory, 'or is not significantly probative, summary judgment may be granted.'" Raczkowski v. Empire Kosher Poultry, 185 Fed. Appx. 117, 118 (3d Cir. 2006) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

## II. FEDERAL STATUTORY CLAIMS

Defendants Centennial Caribbean and Centennial Communications seek judgment on grounds that neither entity can be held liable as Plaintiff's "employer" for purposes of the FMLA, Title VII, and Section 1981. Plaintiff, however, argues that the Defendants' affairs are

so closely interconnected with those of Centennial USVI that they should be considered a single integrated or joint enterprise – each one Plaintiff's "employer" -- for purposes of this litigation.

### A. Title VII/Section 1981 (COUNT I)

Generally speaking, "[i]n the absence of special circumstances, a parent corporation is not liable for the Title VII violations of its wholly owned subsidiary." Watson v. Gulf & W. Indus., 650 F.2d 990, 993 (9th Cir. 1981).  Under Title VII,  a company and its affiliates should be considered a single employer under Title VII  "when a company has split itself into entities with less than fifteen employees intending to evade Title VII's reach; or (2) when a parent company has directed the subsidiary's discriminatory act of which the plaintiff is complaining;" or (3) "when the entities' affairs are so interconnected that they collectively caused the alleged discriminatory employment practice."  Nesbit v. Gears Unlimited, 347 F.3d 72, 84-85, 86 (3d Cir. 2003).   The third consideration entails an "intentionally open-ended, equitable inquiry." Vitalis v. Sun Constructors, Inc., 481 Fed. Appx. 718, 728 (3d Cir. V.I. 2012).

In this case, there is no contention that the first or second considerations apply.  Instead, the focus rests on Plaintiff's contention that the three defendants are so interconnected that they should be considered a single employer.  Accordingly, the factors to consider are as follows:  1) the degree of unity between the entities with respect to ownership, management, and business functions (i.e., hiring and personnel matters); 2) whether they present themselves as a single company such that third parties dealt with them as one unit, 3) whether a parent company indemnifies the salaries, expenses, or losses of its subsidiary, and 4) whether one entity does business exclusively with the other.  Nesbit, 347 F. 3d at 87-88.  In this inquiry, the focus rests "on the degree of operational entanglement – whether operations of the companies are so united

that nominal employees of one company are treated interchangeably with those of another." Id. at 87.

Although the parties rely on Nesbit, several courts have questioned the applicability of Nesbit for purposes of establishing liability, rather than numerosity. See, e.g., Myers v. Garfield & Johnson Enters., 679 F. Supp. 2d 598, 608 (E.D. Pa. 2010); Joseph v. Access Data Corp., 2007 U.S. Dist. LEXIS 102473, at **6-7 (W.D. Pa. Nov. 8. 2007); Lewis v. Vollmer of Am., 2006 U.S. Dist. LEXIS 85692, at *4 n.1 (W.D. Pa. Oct. 25, 2006). Nesbit was concerned with the aggregation of numbers to "create" an employer with the requisite number of employees to establish coverage under Title VII; the issue was initial statutory eligibility, rather than joint liability. I, too, question the applicability of Nesbit in this matter. Cf. EEOC v. NCL America, Inc., 2008 U.S. Dist LEXIS 7811 (D. Hawaii Feb. 1, 2008) (discussing 9th Cir. approach).

In that vein, Plaintiff refers also to the veil-piercing test that predated Nesbit within this Circuit and may remain applicable under circumstances such as those present here. Under that test, the Court is to consider: 1) the interrelation of operations; 2) common management, directors, and boards; 3) centralized control of labor relations; and 4) common ownership and financial control. Vollmer, 2006 U.S. Dist. LEXIS 85692, at *4 n.1. As Plaintiff asserts, courts typically focus on the centralization of labor relations. Centralized control of labor relations refers to whether the parent "controlled the day-to-day employment decisions of the subsidiary." Daniels v. Kerr McGee Corp., 841 F. Supp. 1133 (D. Wy. 1993) (cited with approval in Marzano v. Computer Sci. Corp., 91 F. 3d 497 (3d Cir. 1996)). "While no single factor is dispositive, when the facts of a case are such that the two enterprises reach a sufficient degree of 'sameness' under these factors, a parent may be held liable for a subsidiary's action." Vacaflor v. Pa. State Univ., 2014 U.S. Dist. LEXIS 98541, at *10 (M.D. Pa. July 21, 2014). Because this test has

4

been deemed not to differ significantly from Nesbit, and the parties refer to both tests, I will consider the various factors collectively, rather than separately setting forth each factor of both approaches.

"[T]he courts have found parent corporations to be employers only in extraordinary circumstances." Marzano, 91 F.3d at 513.   For example, in Marzano, our Court of Appeals found no integrated employer despite the fact that plaintiff had been hired by the company that she sought to hold liable; believed that she continued to be employed by that company; continued to receive paychecks from that company; continued to belong to that company's pension plan; and continued to have regular involvement with that company. Id. at 514.   The Court noted that at the time of plaintiff's layoff, her only involvement with the entity in question was her participation in the pension plan, and that she offered no evidence that the entity was involved in her employer's management or personnel decisions. Id.   Similar examples, in which courts rejected single or integrated employment theories in light of interconnected companies, abound. E.g., Herman v. Blockbuster Entertainment Group, 18 F. Supp. 2d 304, 309 (S.D.N.Y. 1988). [2]

In this case, accepting Plaintiff's characterization of the entities' relationships, Centennial Communications is the parent company, and Centennial Caribbean is a subsidiary.  In turn, Centennial Puerto Rico, a non-defendant subsidiary of Centennial Communications, wholly controls Centennial USVI.   Plaintiff's "single employer" theory relies primarily on various points of intersection between Centennial Puerto Rico and Centennial USVI.  Centennial Puerto Rico, however, is not sought to be held liable as an "employer" in this matter.  This analysis

---

[2] In Herman, the companies at issue shared payroll processing, insurance claim processing, tax return preparation, and computer operation work.  One entity had guaranteed the other's loan.  Nonetheless, because the companies shared no common office space, structure in different geographic regions and zones, and maintained separate bank and payroll accounts, the court deemed them insufficiently interrelated. Herman, 18 F. Supp. 2d 304 at 308.

cannot rest on a simple syllogism. The interconnectedness of Centennial Communications and Centennial Puerto Rico, and then then of Centennial Puerto Rico and Centennial USVI, do not sufficiently connect the first and last entities for present purposes. As stated in a different context, this inquiry requires "something beyond the subsidiary's mere presence within the bosom of the corporate family." Dickson Marine Inc. v. Panalpina, Inc., 179 F.3d 331, 338 (5th Cir. 1999). Thus, evidence regarding Centennial Puerto Rico's associations with Centennial USVI, without more, is not dispositive.[3]

     Plaintiff points to several instances of generalized, broad evidence connecting Centennial Communications and Centennial Caribbean with Centennial USVI. The Centennial Communications umbrella, self-described "home" to all of its subsidiaries, clearly constitutes a corporate family. Plaintiff repeatedly points to Centennial Communications' 2008 Annual Report to Shareholders, which contains several statements that reflect this corporate family relationship between affiliated entities – such as references to "our management team" or "our employees." Assuming that the 2008 Annual Report is relevant to Plaintiff's claims, which arose many years prior to 2008, the broad references in that Report do not establish the requisite interconnectedness. These references, and the fact that Plaintiff "looked at everyone as a Centennial employee," do no more than reflect those broad connections. They do not constitute evidence that Centennial Communications or Centennial Caribbean controlled or had any day-to-day involvement in the operations and decisions of Centennial USVI. Indeed, Centennial Caribbean barely surfaces in Plaintiff's factual proffer. There is absolutely no concrete evidence

---

[3] This includes Plaintiff's assertion that Centennial Puerto Rico provided human resources services, and provided backup for USVI opeations, as well the testimony of Centennial Puerto Rico employee Carlos Diliz Davila. This also includes Plaintiff's citation to the Annual Report, which lists Carlos T. Blanco as "President, Puerto Rico Operations." Plaintiff states that Mr. Blanco is the President of Centennial Puerto Rico, but does not offer supporting evidence. Plaintiff cites to Cook v. Arrowsmith Shelburne, 69 F. 3d 1235 (2d Cir. 1995), which involved two entities that, unlike Centennial USVI and the present Defendants, had a direct parent-subsidiary relationship.

that the moving Defendants were involved in hiring, firing, or overseeing Centennial USVI personnel, or daily decisions regarding those employees.

As mere common ownership is insufficient, a single family does not necessarily equate to a single employer, or justify consideration as a single entity. See Nesbit, 347 F.3d at 89. "[P]arent corporations are allowed to participate in subsidiaries' affairs," without being considered a single employer along with that subsidiary. Id. at *30. When contemplated under legal precepts of substantive consolidation, along with summary judgment standards, this evidence is insufficient to raise a genuine issue of material fact.

Moreover, the tangible evidence of interconnectedness that is present does not establish a sufficient foundation for substantive consolidation. For example, the Annual Report suggests that employees receive common training at "Centennial University," and Centennial USVI employees were eligible to participate in Centennial Corporation's health insurance plan. These facts, however, reflect no more than de minimis human resources coordination, which is insufficient in this context. Nesbit, 347 F.3d at 89. "[S]haring certain services or benefits programs does not automatically trigger single employer status…." Mendez v. Puerto Rican Int'l Cos., 2013 U.S. Dist. LEXIS 146077, at *31 (D.V.I. Oct. 4, 2013). "If such routine connections among corporate affiliates necessitated a finding of interrelated operations, most large corporate families would count as single enterprises ...." Velez v. Novartis Pharmaceuticals Corp., 244 F.R.D. 243, 253 (S.D.N.Y. 2007). Similarly, Plaintiff notes that Centennial Communications obtained an FCC license for Centennial Puerto Rico, which license includes the Virgin Islands, and that the Virgin Islands Public Services Commission designated Centennial Communications eligible for federal subsidies. Obtaining a government license or subsidy that covers a subsidiary's region, however, hardly points to the required degree of "sameness" or control.

In sum, I have carefully reviewed the concrete evidence of record, along with each connection that Plaintiff describes, and they do not support a conclusion that operations of Centennial Caribbean, Centennial Communications, and Centennial USVI are so united that nominal employees of one company are treated interchangeably with those of another. Again, the facts of record here undoubtedly present a case of corporate involvement, as is typical with a corporate family; it is equally apparent, however, that they do not establish the sort of involvement contemplated by applicable standards. Accordingly, on the record presented, no reasonable jury could conclude that Defendants Centennial Caribbean and Centennial Communications are liable via the "integrated enterprise" or "single employer" doctrine.

The parties, however, also address the issue of whether the Defendants may be considered "joint employers" for purposes of Title VII:

> Under the joint employer doctrine, where an employee is formally employed by one entity but has "been assigned to work in circumstances that justify the conclusion that the employee is at the same time constructively employed by another entity," that employee may bring suit for "violations of employment law [against] the constructive employer." In other words, "[t]he joint employer concept recognizes that the business entities involved are in fact separate[,] but that they share or co-determine those matters governing the essential terms and conditions of employment." In evaluating a defendant organization's status as a joint employer, the Court should look to "the level of control the organization asserts over the individual's access to employment and the organization's power to deny such access." …Factors to consider include "whether the alleged joint employer (1) did the hiring and firing; (2) directly administered any disciplinary procedures; (3) maintained records of hours, handled the payroll, or provided insurance; (4) directly supervised the employees; or (5) participated in the collective bargaining process.

Mendez, 2013 U.S. Dist. LEXIS 146077, at \*\*15-16 (citations omitted).

In this case, Plaintiff fails to identify evidence that Centennial Communications or Centennial Caribbean participated in the hiring and firing of Centennial USVI employees, directly administered discipline, participated in collective bargaining, or directly supervised or

8

controlled Centennial USVI employees. There are circumstances, such as where the "other" entity directed a plaintiff's termination, where the presence of one factor may raise a genuine issue of material fact. Here, however, despite evidence of some administrative overlap between the subject entities, the level of control on which the "joint employer" inquiry rests is patently absent.[4]

As a final matter, the parties do not separately address substantive consolidation in the context of Section 1981, but the question merits separate – if brief -- mention. Unlike Title VII and the FMLA, 42 U.S.C. § 1981 is not restricted to statutory "employers." Nonetheless, the parties correctly conflate the applicable analyses. Generally, in the employment context, Section 1981 liability can be imposed on a non-employer who relates to the plaintiff as employer, coworker, or supervisor – i.e., someone who is essentially the same as the employer in the acts that underlie a complaint. See, e.g., Santiago v. YWCA of El Paso Found., 2014 U.S. Dist. LEXIS 100635, at **8-9 (W.D. Tex. July 24, 2014); Miller v. Wachovia Bank, 541 F. Supp. 2d 858, 862-63 (N.D. Tex. 2008); Woods v. Washington, 2011 U.S. Dist. LEXIS 278, at **10-11 (W.D. Wash. Jan. 4, 2011). Here, as discussed supra, there is no evidence that either Centennial Communications or Centennial Caribbean Holding bore the requisite relationship to either Plaintiff or the alleged wrongful acts. Accordingly, Plaintiff's Section 1981 claim against these entities cannot stand.

### B.  FMLA (COUNT IV)

Like Title VII, an FMLA claim may stand only against an "employer." Under the FMLA, separate entities may be considered a single entity if the totality of the circumstances show that there is (1) common management; (2) interrelation between operations; (3) centralized

---

[4] Again, Plaintiff attempts to extrapolate from the links between Centennial Puerto Rico and Centennial USVI. As discussed supra, that connection is not sufficient here.

control of labor relations; and (4) degree of common ownership/financial control. 29 CFR § 825.104(c)(2). For the same reasons that Centennial Communications and Centennial Caribbean cannot be considered Plaintiff's "employer" under Title VII, they cannot be considered his "employer" under the FMLA. These Defendants are entitled to judgment on Count IV of Plaintiff's Amended Complaint.

### III. TERRITORIAL STATUTORY CLAIMS (COUNT II)

Plaintiff avers that Defendants' conduct violated the Anti-Discrimination Laws contained in Titles 10 and 24 of the Virgin Island Code.[5] Defendants, in turn, contend that their non-employer status is fatal to Plaintiff's territorial statutory claims. The parties appear to agree that similar analyses apply in the federal and territorial statutory context, as Plaintiff does not separately address the issue with respect to the Virgin Islands Code provisions at issue. Cf., e.g., Hodge v. Nat'l Rural Utils. Coop. Fin. Corp., 2014 U.S. Dist. LEXIS 58978, at *20 (D.V.I. Apr. 28, 2014); Mendez , 2013 U.S. Dist. LEXIS 146228, at **13-24. Accordingly, because I have concluded that neither of the moving Defendants can be considered Plaintiff's "employer" under potentially applicable standards proffered by the parties, each is likewise entitled to judgment on Plaintiff's claims under the Virgin Island Code.

### IV. COMMON LAW CLAIMS (COUNTS III, V, VI, VII, VIII)

In addition to his statutory claims, Plaintiff brings common law claims of misrepresentation, breach of contract and the duty of good faith and fair dealing, defamation, intentional infliction of emotional distress, and a claim for punitive damages. Defendant seeks judgment on all of these claims, on grounds that there is no evidence that they directly engaged in the challenged conduct, and cannot be held liable as Plaintiff's employer. They further note

---

[5] Recently, courts have noted conflicting opinions regarding private right of action under territorial anti-discrimination statutes. Hodge v. Nat'l Rural Utils. Coop. Fin. Corp., 2014 U.S. Dist. LEXIS 58978 (D.V.I. Apr. 28, 2014).

that Plaintiff's punitive damages claim is not independently actionable. Plaintiff does not proffer any facts to demonstrate that Defendants directly committed the alleged tortious acts, and I have already decided that neither entity can be considered Plaintiff's employer. For these reasons, Defendants are entitled to judgment on Plaintiff's common law claims.

## CONCLUSION

In sum, there is no genuine issue of material fact regarding the potential liability of Centennial Communications and Centennial Caribbean Holding. Therefore, those Defendants are entitled to Summary Judgment on Plaintiff's Complaint against them.

An appropriate Order follows.

## ORDER

AND NOW, this 4th day of September, 2014, it is hereby ORDERED, ADJUDGED, and DECREED that Defendants' Motions for Summary Judgment [186] [189] are GRANTED. Judgment is hereby entered in favor of Centennial Caribbean Holding Corp. and Centennial Communications Corp.

BY THE COURT:

/s/Donetta W. Ambrose

Donetta W. Ambrose

Senior Judge, U.S. District Court