**IN THE UNITED STATES DISTRICT COURT
FOR THE VIRGIN ISLANDS
DIVISION OF ST. CROIX**

| | |
|---|---|
| FORREST THOMAS, | ) |
|  | ) No. 3-163 |
| Plaintiff, | ) |
| v. |  |
| CENTENNIAL COMMUNICATIONS CORP., CENTENNIAL CARIBBEAN HOLDING CORP., and CENTENNIAL USVI OPERATIONS CORP., |  |
| Defendants |  |

**OPINION AND ORDER**

**SYNOPSIS**

In this civil action, Plaintiff, who was in the employ of Defendant Centennial USVI, alleges claims under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, the Civil Rights Act, 42 U.S.C. § 1981, the Family Medical Leave Act ("FMLA"), 29 U.S.C.S. § 2615(a)(1), and various Virgin Islands anti-discrimination statutes. He also brings common law claims of misrepresentation, breach of contract and the duty of good faith and fair dealing, defamation, intentional infliction of emotional distress, and a claim for punitive damages. Essentially, his claims center on his allegations that Defendants discriminated against him in his employment because he is black, and not Puerto Rican. Specifically, Plaintiff claims that he was not hired for a managerial position, and was terminated, as a result of such discrimination. By Order dated September 9, 2014, summary judgment was entered in favor of Defendants Centennial Caribbean and Defendant Centennial Communications.

1

Presently before the Court is Defendant Centennial USVI's Motion for Summary Judgment. For the following reasons, the Motion will be granted in part, and I will decline to exercise supplemental jurisdiction over the remaining state law claims.

### I.   SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the Court must examine the facts in a light most favorable to the party opposing the motion. International Raw Materials, Ltd. V. Stauffer Chem . Co., 898 F. 2d 946, 949 (3d Cir. 1990). The moving party bears the burden of demonstrating the absence of any genuine issues of material fact. United States v. Onmicare, Inc., 382 F. 3d 432 (3d Cir. 2004).

Rule 56, however, mandates the entry of judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof. Celotex Corp. v. Cattrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 265 (1986). The sum of the affirmative evidence to be presented by the non-moving party must be such that a reasonable jury could find in its favor; it cannot simply reiterate unsupported assertions, conclusory allegations, or suspicious beliefs. Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995). "[I]f the non-movant's evidence is merely speculative, conclusory, 'or is not significantly probative, summary judgment may be granted.'" Raczkowski v. Empire Kosher Poultry, 185 Fed. Appx. 117, 118 (3d Cir. 2006) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). The non-moving party must "go beyond the pleadings and by her own affidavits, or

by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324.

## II. FEDERAL STATUTORY CLAIMS

### A. FMLA

Plaintiff avers that Defendant's conduct following Plaintiff's requests for leave, in connection with his mother's illness and subsequent death, violated the FMLA. When Plaintiff made the request, his supervisor advised him that he needn't take leave, but should take the time he needed with his mother, and it wouldn't affect his employment. Defendant argues that it is not a covered employer under the FMLA, because it did not employ the requisite number of employees. In opposition, Plaintiff urges that Centennial USVI and Centennial Puerto Rico, a non-party to this action, be considered "integrated employers" for the purposes of the FMLA's numerosity requirement.

The FMLA applies to employers with fifty or more employees. 29 U.S.C. § 2611(4)(A)(i). Moreover, the FMLA considers only employees that are located within seventy-five miles of the plaintiff's location. 29 U.S.C. § 2611(2)(B)(ii); Godshall v. Independence Communs., Inc., 2011 U.S. Dist. LEXIS 137216, at **10-11 (E.D. Pa. Nov. 30, 2011). Accordingly, a plaintiff is eligible under the FMLA if fifty or more of the employer's employees are located within seventy-five miles of plaintiff's location. Godshall, 2011 U.S. Dist. LEXIS 137216, at **9-10. Plaintiff does not dispute that Defendant's employees, standing alone and absent aggregation with another office or entity, do not fulfill these requirements; instead, Plaintiff suggests that the employees of Centennial Puerto Rico be aggregated with those of Defendant. Plaintiff, however, neither suggests nor demonstrates that Centennial Puerto Rico's offices lie within, nor employs the requisite number of persons within, seventy-five miles of

3

Centennial USVI.[1]   Accordingly, even if Centennial USVI and Centennial Puerto Rico were sufficiently interconnected to meet applicable tests under the FMLA, Plaintiff does not demonstrate that Centennial Puerto Rico's employees are properly considered in this context. See Beamer v. Herman Chiropractic Ctr., 2011 U.S. Dist. LEXIS 105621, at *10 (M.D. Pa. Sept. 16, 2011).   Moreover, Plaintiff does not dispute Defendant's assertion that considering St. Thomas and St. Croix employees in conjunction would not meet the statutory numbers.  These numerosity issues are threshold requirements of Plaintiff's claim for relief.  See Godshall, 2011 U.S. Dist. LEXIS 137216, at **9-10.   Accordingly, absent evidence establishing that such requirements are met, Defendant is entitled to judgment on Plaintiff's FMLA claim.

B.  **SECTION 1981**

Defendant seeks judgment on Plaintiff's Section 1981 claim, inter alia, on grounds that the discrimination based on national origin is not covered by Section 1981, and that the claim fails at various stages of the analysis required by McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

Plaintiff's claims center on his allegations that illegal discrimination caused both his termination and the failure to hire him for a Retail Kiosk Supervisor position.  I understand Plaintiff's contention to be that his termination and subsequent failure to promote are interrelated – i.e., that he was illegally terminated from employment, and because the interview process for the supervisory position began almost immediately after his termination, he was illegally

---

[1] Courts utilize surface miles, rather than linear miles, in calculating distance. Godshall v. Independence Communs., Inc., 2011 U.S. Dist. LEXIS 137216, at **16-17 (E.D. Pa. Nov. 30, 2011).   Moreover, a court may take judicial notice of geographic distances.  Kumon N. Am., Inc. v. Timban, 2014 U.S. Dist. LEXIS 88369, at *31 (D.N.J. June 27, 2014).   I take no such notice in this case, as there is no undisputed factual record regarding the precise locations of Centennial Puerto Rico and Centennial USVI.  Nonetheless, although this does not constitute grounds for my decision, I note that the Annual Report supplied by Plaintiff lists a Puerto Rico office located in San Juan**.**  Deposition testimony suggests another office in Ponce. According to distancefromto.net, the distance between San Juan or Ponce and Frederiksted, St. Croix, which is on the side of St. Croix nearest to Puerto Rico, is well in excess of seventy-five miles.

precluded from consideration. Thus, I will consider the course of events together, rather than treating the termination and failure to promote as separate incidents.

### 1. National Origin

It is true, as Defendant asserts, that Section 1981 does not bar discrimination on grounds of national origin. "To state a claim under § 1981, a plaintiff must allege that he or she is a member of a racial minority, that the defendant had the intent to discriminate on the basis of race, and the discrimination concerned one or more of the activities enumerated in the statute, which includes the right to make or enforce contracts." Bridgeforth v. Am. Educ. Servs., 412 Fed. Appx. 433, 435 (3d Cir. 2011). "[I]nsofar as a claim for discrimination based upon ancestry or ethnic characteristics is actionable under § 1981, it is only because such a claim is understood to be a claim for race discrimination." Schouten v. CSX Transp., Inc., 58 F. Supp. 2d 614, 618 n. 6 (E.D. Pa. 1999).

In this case, Plaintiff asserts that he suffered discrimination because he was a black West Indian, and not Hispanic Puerto Rican. The words "Puerto Rican" and "West Indian" commonly refer to national origin. To the extent that Plaintiff's Section 1981 claims are based on national origin, they cannot survive. Plaintiff, however, also asserts that he suffered discrimination because he was black, and not Hispanic. These allegations, if proven, would support a claim for racial discrimination. Accordingly, the entirety of Plaintiff's Section 1981 claim does not fail on grounds that they are founded on an unprotected status.

### 2. McDonnell-Douglas

Therefore, I must proceed to assess the substance of Plaintiff's Section 1981 claim insofar as it is based on race discrimination. The substantive elements of a claim under Section 1981 are "identical to the elements of an employment discrimination claim under Title VII."

Brown v. J. Kaz., Inc., 581 F.3d 175, 181-82 (3rd Cir. 2009). Both parties point to the well-established analysis supplied by McDonnell Douglas, 411 U.S. 792, 802, under which a plaintiff bears the prima facie burden of demonstrating that he suffered an adverse employment action "under circumstances that give rise to an inference of unlawful discrimination." Greenawalt v. Clarion County, 2012 U.S. App. LEXIS 1696, at **5 (3d Cir. Jan. 30, 2012).

If the plaintiff meets his prima facie case, the burden of production shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for its conduct. McDonnell Douglas, 411 U.S. at 802. An employer satisfies this relatively light burden by introducing evidence that would permit the conclusion that there was a nondiscriminatory reason for its actions. Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). At this stage, the employer need not prove that the tendered reason actually motivated its behavior, and the Court must accept the proffer without measuring its credibility. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993); Texas Dept. Of Comm. Affairs v. Burdine, 450 U.S. 248, 253, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981).

Once an employer presents evidence of a legitimate reason for its actions, the burden shifts back to Plaintiff to show that the proffered reason is a pretext for discrimination. Iadimarco v. Runyon, 190 F.3d 151, 158 (3d Cir. 1999). To do so, a plaintiff must submit evidence from which a reasonable fact finder could either disbelieve the employer's articulated legitimate reasons; or conclude that discrimination was more likely than not a motivating or determinative cause of the employer's action. Fuentes, 32 F.3d at 762. In this context, "'it is not enough … to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination.'" Id. (quoting Hicks, 509 U.S. at 519). Therefore, "[t]o discredit the employer's proffered reason … the plaintiff cannot show that the employer's decision was wrong or

6

mistaken since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent." Id. at 765. The plaintiff, therefore, must demonstrate "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the defendant employer's legitimate reasons. Id.

Here, assuming arguendo that Plaintiff has met his prima facie burden, Defendant has proffered legitimate reasons for its actions. It is undisputed that Plaintiff did not meet his sales quotas for three consecutive months, and that Defendant's policy thus called for termination; likewise, it is undisputed that interviewing did not begin for the Retail Kiosk Supervisor position until after Plaintiff had been terminated. Regarding Defendant's failure to strictly adhere to its "three strikes and you're out" policy, it is undisputed that Plaintiff's supervisor during the pertinent time period, Desiree Larragoity, did not "give a lot of attention to the quota thing and the memo thing, to take out employees, because it was very difficult to find employees in St. Croix and St. Thomas." Together, these qualify as legitimate explanations for the events that form the basis of this litigation.

Thus, the analysis proceeds to the pretext stage. I note, from the outset, that other than the comparators proffered, the record is devoid of relevant evidence that would support a finding of racial animus.[2] In so concluding, I have carefully combed the entire record. Plaintiff points to

---

[2] I note the at best diminished probative value of evidence relating solely to national origin discrimination, such as Plaintiff's contention that all of the managers were of Puerto Rican descent, and that Puerto Rican employees were preferred over local Virgin Islanders. See, e.g., Prentice v. Officemax N. Am., 2012 U.S. Dist. LEXIS 35090, at **5-6, n. 2 (D.V.I. Mar. 15, 2012); Moore v. Kingsbrook Jewish Med. Ctr., 2013 U.S. Dist. LEXIS 107111 (E.D.N.Y. July 30, 2013). I cannot take into consideration, in this context, whether Defendant considered Plaintiff's status as a "local," rather than a Puerto Rican, employee; at issue under Section 1981 is solely whether Defendant was motivated by illegal racial considerations. Accordingly, all evidence relating solely to national origin – such as evidence that Defendant relocated employees to St. Croix from Puerto Rico rather than seeking a person to fill a position in St. Croix -- is not relevant to Section 1981.

I do, however, acknowledge the possibility that race and national origin may be conflated in common usage and as a practical matter. Nonetheless, even if I were to consider evidence that potentially implicates race and not solely national origin, the evidence remains insufficient. For example, Plaintiff felt that he was used as a "token West Indian." Two events underlie this allegation: on one occasion, Ms. Buono told Plaintiff to represent himself as a

evidence relating to Joanne Buono, who was his supervisor at the time that he was hired in May, 2001. Ms. Buono was alleged to have made derogatory comments about West Indians and blacks, and those remarks were made the subject of a company investigation. Ms. Buono subsequently resigned in July, 2001, within months after Plaintiff's hiring. Therefore, she was not involved in Plaintiff's 2003 performance notices regarding quotas, termination, or any of the other events that form the basis of this litigation. Plaintiff also points to evidence Sam Brown, a black employee was terminated from his position as regional manager in 2005 due to poor performance.[3] There is no evidence, such as comparator evidence, which would render this termination relevant to this case. The mere fact that another black employee was fired, from a different position, for different reasons, by a different supervisor, and that this occurred years after Plaintiff's termination, is not evidence of racial animus.

Plaintiff also relies heavily on the fact that the management team, including Ms. Larragoity, were of Puerto Rican descent, and that business was often conducted in Spanish. It is abundantly clear, however, that one cannot infer discrimination from the mere fact that supervisory or managerial personnel share a common race, ethnicity, or language that differs from that of Plaintiff. See, e.g., Coulton v. Univ. of Pa., 237 Fed. Appx. 741, 747-48 (3d Cir. 2007); Henny v. New York State, 842 F. Supp. 2d 530, 557 (S.D.N.Y. 2012) (citing cases); Yao Kouakou v. Fideliscare N.Y., 920 F. Supp. 2d 391, 402 (S.D.N.Y. 2012); Jones v. Express Jet Airlines, 2011 U.S. Dist. LEXIS 121226, at *11 (D.N.J. Oct. 17, 2011).

---

manager; and on one other occasion, Carlos Bofill told Plaintiff that he would someday be manager, and thus he should represent the company and speak to assembled newspaper reporters. Plaintiff's "feeling" based on these facially neutral comments is not sufficiently probative of discrimination. Moreover, as noted in the body of the Opinion, evidence relating to Ms. Buono is temporally deficient for present purposes.

[3] The testimony to which Plaintiff cites suggests that Mr. Brown was terminated from that position due to sales performance, inventory control, and cash management control. That same testimony discusses Vicente Hernandez, an employee of Puerto Rican descent, who was also separated from his employment.

Thus, we move to the comparator evidence that Plaintiff has proffered. "Differential treatment is, of course, the sine qua non of a discrimination claim. Despite the burden-shifting paradigm at play in such a case, the ultimate burden of proving intentional discrimination rests, at all times, with the plaintiff." Reynolds v. Port Authority, 2009 U.S. Dist. LEXIS 54760, at *27 (W.D. Pa. June 6, 2009). With that in mind, "we do not look at each incident in isolation; rather, we examine the 'overall [employment] scenario.'" Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1083 (3d Cir. 1996). If two employees "engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish . . . the employer's treatment of them," they will be deemed "similarly situated." McCullers v. Napolitano, 427 Fed. App'x 190, 195 (3d Cir. 2011).

First, I look to Plaintiff's contention that Jose Felix, a Hispanic man, was not terminated due to missing sales quotas for three cycles in six months, while Plaintiff was so terminated. Plaintiff was hired in May, 2001 as an Inside Sales Representative ("ISR") for Defendant in May of 2001, but shortly thereafter, was moved (or, as Plaintiff terms it, promoted) to an Outside Sales Representative ("OSR") position. The positions differ, partly in that an ISR assists with customer service transactions, makes changes, collects payments, and administers kiosk locations, while an OSR looks for sales opportunities within a market area, makes contact with local companies and obtains sales opportunities with them, and attends trade shows and community activities as a sales representative. Plaintiff was the only OSR on St. Croix.

Plaintiff's performance was measured by quotas during sales cycles, which commenced the 26th day of each month, and ended the 25th day of each following month. It is undisputed that Plaintiff, as an OSR, failed to reach his sales quotas for several sales cycles, including the cycle that encompassed the death of his mother. He received performance notices for some of those

9

cycles, and not others.[4] Specifically, Plaintiff failed to meet his quota for the sales cycles ending in September, 2002, November, 2002, February, 2003, March, 2003, April, 2003, and May, 2003. He received notices for four out of these six cycles. He did not receive a notice for the cycle ending on March 25, 2003, which included the passing of his mother on March 15, 2003. Plaintiff met 0% of his quota during the following cycle, which ended on April 25, 2003. He received a notice for that cycle. Ultimately, Plaintiff was terminated on June 11, 2003, the stated reason being his failure to meet quota on three occasions within a six month period. Just prior to his termination, Plaintiff received what I will assume, for present purposes, may be seen as a positive performance review.[5]

Jose Felix, the only person to whom Plaintiff points as a comparator, was hired as an ISR in August, 2002. Mr. Felix failed to meet his quota during three consecutive cycles, from February to April, 2003. He received notices for all three cycles. Subsequently, Mr. Felix told Plaintiff, "they ready to fire me…but she [Ms. Larragoity] give me a break." Mr. Felix told Plaintiff that Ms. Larragoity indicated that Felix would be fired if he did not make his sales by the next month. Mr. Felix also told Plaintiff that he would resign if he could not make up his sales, because he did not want to be fired. Mr. Felix further testified that he was, in fact, unable to meet the quotas, and thus he resigned effective June, 2003. Plaintiff points to no evidence regarding any other employee's race, sales performance, or disciplinary record, or lack thereof.[6]

---

[4] I use the term "performance notice" or "notice" for purposes of consistency and clarity, although the parties' submissions refer to various types or forms of written discipline, such as counseling memos. Neither party indicates that any distinction between forms of written discipline is pertinent to this case.

[5] "Although courts have recognized that an employee's termination following positive performance reviews can give rise to an inference of discrimination, these cases generally involve at least one additional factor indicating that the shift from positive evaluations to termination was based on a discriminatory motive." Haskins v. Christiana Care Health Servs., 701 F. Supp. 2d 623, 631 (D. Del. 2010).

[6] The record reflects Felix and Plaintiff were in the same "group" at work as Gisella Rodriguez, Jennifer Walcott, and Lynton Joseph. Plaintiff asserts that Puerto Rican employees who did not meet their sales quotas were not terminated, but points to none other than Mr. Felix. A plaintiff cannot selectively choose a comparator to establish discrimination, "because to hold otherwise would be to permit the inference of discrimination anytime a single

Although Plaintiff asserts that Puerto Rican employees were not dismissed for failing to meet quota, the deposition testimony cited does not support that proposition.[7]

Assuming without deciding that Mr. Felix and Plaintiff were "similarly situated" despite their differing ISR and OSR positions, comparing the two employees does not give rise to sufficient evidence of pretext. Although Plaintiff stated that Mr. Felix was given a "chance" and Plaintiff was not, Plaintiff in fact missed his quota for four consecutive cycles before he was terminated, and received no notice for two inadequate quota cycles. Mr. Felix, in turn, resigned before he could be terminated for the fourth failed cycle. In other words, if Defendant failed to follow its policy regarding quotas, it did so in the cases of both Mr. Felix and Plaintiff – a failure that Ms. Larragoity explained by pointing to the difficulty in finding employees on St. Croix. Even if a reasonable jury could conclude that Mr. Felix received more favorable treatment than Plaintiff, this constitutes very weak evidence of racial discrimination under the circumstances. Leyva v. Computer Scis. Corp., 169 Fed. Appx. 720, (3d Cir. 2006). Although Defendant's conduct may be unwise or unfair, absent evidence of discrimination, it is not the Court's role to second guess an employer's business decisions. Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509 (3d Cir. 1992).

I look next to Plaintiff's claim surrounding the failure to hire or promote. Having found that Plaintiff has failed to produce sufficient evidence that his termination was motivated by discriminatory animus, it would be difficult to conclude that Defendant's post-termination failure

---

member of a nonprotected group was allegedly treated more favorably than one member of the protected group, regardless of how many other members of the non-protected group were treated equally or less favorably." Simpson v. Kay Jewelers, Inc., Div. of Sterling, Inc., 142 F.3d 639, 646 (3d Cir. 1998). Single comparator evidence cannot be viewed in a vacuum. Id.

[7] To the contrary, in the cited portion of the deposition, Edwin Stevenson testified that he did not recall any instances in either the Virgin Islands or Puerto Rico, other than the situation of Jose Felix presented during the deposition, in which Ms. Larragoity had failed to follow the policy regarding expectations of sales representatives.

to consider him for a supervisory position was illegally motivated. To the extent that his failure to hire claim depends on his termination claim, on which judgment will be entered, it must fail.

Nonetheless, I will assess Plaintiff's contentions. On or about May 6, 2003, Centennial USVI posted an opening for the new position of Retail Kiosk Supervisor in St. Croix. The posting stated, in part, that qualified candidates would be "responsible for the attainment of monthly sales objectives on a constant basis." Paul Ruiz and Liz Torres, in addition to Plaintiff, applied for the position. Plaintiff testified that Ms. Larragoity told him that there was a hiring freeze in place, but later testified that she had no recollection of a hiring freeze. Interviews began in June, 2003, following Plaintiff's termination. Ms. Torres was hired as of August, 2003. She had been a Team Leader, a position that Plaintiff had been offered and rejected, since 2001. A Team Leader is a supervisor for ISRs, and also is required to make sales. As Retail Kiosk Supervisor, Torres was responsible for directing and supervising the ISRs in St. Croix.

As to this claim, Plaintiff has again failed to meet his burden under McDonnell-Douglas. For example, Plaintiff relies on the fact that Ms. Torres, who was hired for the St. Croix management position, had one year of cellular sales experience while Plaintiff had fifteen. "Whether a court thinks that an employer misjudged a plaintiff's qualifications does not, in itself, make the employer's legitimate reasons unworthy of belief." Prentice v. OfficeMax N. Am., 2012 U.S. Dist. LEXIS 35090, at *36 (D.V.I. Mar. 15, 2012). Moreover, a Plaintiff's own assessment of his relative qualifications is not at issue in an alleged discrimination case. Johnson v. Penske Truck Leasing Co., 949 F. Supp. 1153, 1172 (D.N.J. 1996). Moreover, whether Ms. Larragoity relayed false news of a hiring freeze is of no moment, because if she did so, such a falsehood simply does not suggest racial animus. Neither the fact nor circumstances surrounding the Retail Kiosk Supervisor position give rise to an inference of illegal discrimination.

In all, Plaintiff offers no more than unsupported conjecture that his race factored into the decision to terminate him, or that his termination was intended to preclude his elevation to a supervisory position because of his race. A pretext case may survive summary judgment "when the employer's stated reason for [the challenged conduct] is so implausible that a reasonable fact-finder could not believe it." Connolly v. Pepsi Bottling Grp., LLC, 2008 U.S. Dist. LEXIS 72279, at *24 (W.D. Pa. Sept. 22, 2008). There are no grounds for so finding in this case. A pretext case may also survive if the evidence is "so revealing of discriminatory animus that it would enable a factfinder to conclude that a discriminatory attitude was, more likely than not, a motivating factor in the decision." Anderson v. Wachovia Mortg. Corp., 621 F. 3d 261, 269 (3d Cir. 2010). Repeatedly pointing to a profusion of Puerto Rican or Hispanic persons in Defendant's employ, or to isolated, facially neutral and explainable business decisions, does not enable such a conclusion.

Moreover, at this stage in the analysis, the "factual inquiry into the alleged discriminatory motives of the employer has risen to a new level of specificity," and tenuous inferences are insufficient. See Simpson, 142 F. 3d at 646. Even when viewed in a light most favorable to Plaintiff, he has failed to demonstrate that Defendant's reasons were a pretext for racial discrimination either by producing evidence that Defendant's explanation is unworthy of credence, or evidence of discrimination. Defendant is entitled to judgment on Plaintiff's Section 1981 claim.

    A. **TITLE VII**

Next, I address Plaintiff's Title VII claim. Defendant contends that this claim fails, because Plaintiff did not obtain a right to sue letter from the relevant agencies. Plaintiff filed an

agency charge on July 9, 2003.  This action was commenced on September 29, 2003.[8]  The record contains letters dated October 9, 2003 and April 26, 2004, which reflect that the territorial agency and the EEOC, respectively, discontinued their investigations as a result of this pending litigation.  Plaintiff does not dispute that no right to sue notice was issued.   In defense, Plaintiff notes that an EEOC filing is not a jurisdictional prerequisite, and that he did commence a timely filing with the EEOC.

The issue is not one of jurisdiction, however, but of exhaustion.  "A plaintiff may not file a Title VII … suit in federal court without first exhausting avenues for redress at the administrative level pursuant to 42 U.S.C. § 2000e-16(c)." Tani v. FPL/NextEraEnergy, 2013 U.S. Dist. LEXIS 105600, at *18 (D. Del. July 29, 2013).  "This prerequisite, akin to a statute of limitations, mandates dismissal of the Title VII … claim if a plaintiff files the claim before receiving a right to sue notice." Id.  Our Court of Appeals has clearly stated, "A plaintiff 'must exhaust all required administrative remedies before bringing a claim for judicial relief.' To bring a claim under Title VII, a plaintiff must file a charge of discrimination with the EEOC and procure a notice of the right to sue." Mandel v. M&Q Packaging Corp., 706 F.3d 157, 163 (3d Cir. 2013) (citations omitted).  "The receipt of a right-to-sue letter indicates that a complainant has exhausted administrative remedies and, therefore, a complainant may not bring a Title VII suit without having first received one." Gary v. R C Fabricators, Inc., 2012 U.S. Dist. LEXIS 74645, at *3 (D. Del. May 30, 2012).

The failure to obtain a right to sue letter is, typically, considered a curable defect. Monaco v. Jim Thorpe Area Sch. Dist., 2012 U.S. Dist. LEXIS 107506, at *10 (M.D. Pa. Aug. 1, 2012).  When amendment would be inequitable or futile, however, leave to cure the defect

---

[8] The Charge bears two dates, 7/9/03 and 9/7/03.  Plaintiff asserts that it was filed on 7/9/03.  Accordingly, the 180 day period applicable to the issuance of a right to sue letter would have ended on January 5, 2004.

needn't be granted. Phillips v. Sheraton Soc'y Hill, 163 Fed. Appx. 93, 94 (3d Cir. 2005). I emphasize that the exhaustion requirement is not a mere technicality. Instead, "[t]he purpose of this administrative exhaustion requirement is to put the EEOC on notice of the plaintiff's claims and afford it 'the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court.'" Webb v. City of Phila., 562 F.3d 256, 262 (3d Cir. 2009).

In this particular case, Plaintiff proffers no justification for his failure to procure a right to sue letter; thus, I conclude that he has not exhausted his administrative remedies. Determining whether amendment would be futile in terms of the substance of Plaintiff's Title VII claim, however, would entail a fact-intensive inquiry that, if pursuit of an administrative remedy proves futile from the perspective of the EEOC, would constitute a waste of judicial resources. Moreover, this Court cannot speculate regarding the pertinent agencies' potential handling of any attempts to resuscitate or reinitiate Plaintiff's 2003 filing; such attempts may or may not prove futile. Finally, this matter has reached a late stage in the proceeding, after many years, with significant resources expended by the parties and the Court. Equitable considerations equally favor dismissal with and without prejudice. At this point, in the interest of justice, I will enter judgment in Defendant's favor on Plaintiff's Title VII claim, without prejudice to Plaintiff to reassert the claim following the exhaustion of administrative remedies. I have, however, already determined that Plaintiff's claim of racial discrimination fails under the same McDonnell-Douglas analysis applicable to Title VII. Accordingly, the claim is dismissed without prejudice solely as to Plaintiff's Title VII claim for discrimination on grounds other than race.

### III. SUBJECT MATTER JURISDICTION

Having determined to dismiss all claims on which federal subject matter jurisdiction might be based, I must consider whether to continue to exercise jurisdiction over this matter.

Plaintiff's Amended Complaint states diversity as grounds for jurisdiction. Diversity jurisdiction, however, requires complete diversity of citizenship. 28 U.S.C. § 1332(a)(1). Defendant, as pleaded by Plaintiff, is incorporated in Delaware and has its principal place of business in the US Virgin Islands, and is thus properly considered a citizen of both. Plaintiff pleads that he is domiciled in the US Virgin Islands. Thus, no complete diversity supports the Amended Complaint. See Davis v. Union Pac. RR Co., 224 Fed. Appx. 190 (3d Cir. 2007).

Lacking grounds for either federal question or diversity jurisdiction, I turn to the issue of supplemental jurisdiction. A district court may decline to exercise supplemental jurisdiction in several circumstances, including a situation where "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Indeed, "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000). In this instance, solely territorial claims remain, some of which rest on law that is less than well-settled; considerations of judicial economy and convenience do not favor a federal court, sitting in Pennsylvania, trying claims based on Virgin Islands territorial law. Under the circumstances, I will decline to exercise jurisdiction over the remaining claims. As a result, I will also deny, without prejudice, the Motions pending on the docket.

## CONCLUSION

In conclusion, Defendant's Motion for Summary Judgment will be granted in part, and I will decline to exercise supplemental jurisdiction as to the remaining claims. I sympathize both with Plaintiff's sense that he has suffered injustices in his workplace, and with any difficulties or

frustration that may have affected both Plaintiff and Defendant as a result of the protracted path of this litigation. Nevertheless, after careful consideration of applicable legal standards, I am constrained to find that Plaintiff's claims cannot be sustained in this forum. An appropriate Order follows.

**ORDER**

AND NOW, this 10th day of October, 2014, it is hereby ORDEED, ADJUDGED, and DECREED that Defendant's Motion is GRANTED in part, and judgment is entered on Counts I (Title VII and Section 1981) and IV (FMLA) of Plaintiff's Amended Complaint. This decision is without prejudice solely as to Plaintiff's Title VII claim on grounds other than race. Further, I decline to exercise jurisdiction over Plaintiff's remaining territorial statutory and common law claims, and dismiss those claims without prejudice to Plaintiff to bring them in the appropriate forum. Likewise, the Daubert Motions pending on the docket shall be denied, without prejudice to the parties to refile them in the new forum. Should Plaintiff refile in territorial court, that court shall not hold against Plaintiff the time elapsed during the handling of this litigation in federal court.

BY THE COURT

s/Donetta W. Ambrose

Donetta W. Ambrose

Senior Judge, U.S. District Court